UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| LISA HOLDEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 1:19-CV-28-TAV-CHS ) |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

This civil matter is before the Court on the Report and Recommendation ("R&R") entered by United States Magistrate Judge Christopher H. Steger, on August 10, 2020 [Doc. 30]. In the R&R, Magistrate Judge Steger recommends the Court grant Defendant's Motion for Judgment on the Record [Doc. 21], deny plaintiff's Motion for Judgment on the Pleadings [Doc. 23], and enter judgment for the defendant. Plaintiff filed her objections on August 24, 2020 [Doc. 31]. Defendant filed a response [Doc. 32], and plaintiff replied [Doc. 33]. Because the Court agrees with Judge Steger's conclusion, it will **OVERRULE** defendant's objections [Doc. 31], **ACCEPT IN WHOLE** the R&R [Doc. 30], **DENY** plaintiff's motion for judgment on the pleadings [Doc. 23], **GRANT** defendant's motion for judgment on the record [Doc. 21] and **ENTER** judgment for defendant.

## I. Background

The Court presumes familiarity with the R&R's description of the background. Neither party objected to the magistrate judge's factual summary [Doc. 31]. The Court, therefore, incorporates by reference the background section from the R&R.

## II. Standard of Review

A court must conduct a *de novo* review of those portions of a magistrate judge's R&R to which a party objects unless the objections are frivolous, conclusive, or general. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "Objections disputing the correctness of the magistrate's recommendation, but failing to specify the findings believed to be in error are too general and therefore insufficient." *Stamtec, Inc. v. Anson*, 296 F. App'x 516, 519 (6th Cir. 2008) (citing *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006)); *see also Daniel v. Astrue*, No. 4:10-cv-32, 2011 WL 4062274, at *1 (E.D. Tenn. Sept. 6, 2011) ("The Court finds that Plaintiff's objections raise no new arguments but simply reargue issues previously raised in his Brief in Support of Motion for Judgment on Administrative Record, which issues were fully addressed in the Report and Recommendation. The Court finds that further analysis of these same arguments would merely be cumulative and is unwarranted in light of Magistrate Judge Carter's well-reasoned and well-supported Report and Recommendation."). "The parties have 'the duty to pinpoint those

portions of the magistrate's report that the district court must specially consider.'" *Mira*, 806 F.2d at 637 (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)).

### III.  Analysis

Plaintiff raises five objections on two general themes, namely that the magistrate judge erroneously concluded that defendant reasonably interpreted the evidence as demonstrating plaintiff was only prevented from working at her unique workplace and that the magistrate judge failed to address several procedural irregularities in defendant's decision making process. As to the first grouping, plaintiff objects that the magistrate judge (A) found "that Dr. Fischer only opined Ms. Holden was prevented from performing her occupation for any employer as of June 2016, six months after Unum had made its initial decision" and (B) "erroneously conflate[d] the workplace being the original source" of plaintiff's trauma with "only impacting her at that specific workplace" [Doc. 31 p. 7].  In the second grouping, Plaintiff states the magistrate judge did not address several procedural issues and repeats her arguments from her memorandum in support of judgment on the pleadings [Doc. 24], specifically that Unum (1) altered its reasoning for denying plaintiff's claim between the initial and final decisions without giving opportunity to respond, (2) created an "illogical, self-serving timeline" in its decision making, and (3) "withheld material evidence generated in its decision on short term disability benefits from its long term disability determination" [Doc. 31. p. 7–8]. The Court will address each argument in turn.

3

### A. Timing of Dr. Fisher's Opinions

Plaintiff states the magistrate judge found that Dr. Fischer only opined plaintiff was prevented from performing her occupation for any employer as of June 2016, six (6) months after defendant made its initial decision, when he had previously stated this opinion in October 2015 [Doc. 31 p. 8–9]. While the magistrate judge did state that Dr. Fisher changed his opinion, plaintiff is mistaken as to which opinion he referred. It is true that Dr. Fisher noted plaintiff was unable to perform her occupation for any employer in October 2015, as he did in June 2016. The magistrate judge instead referred to Dr. Fisher's post-denial change of opinion increasing the severity and number of plaintiff's symptoms and the strength of his opinion. The magistrate judge said "[i]t was not until June 20, 2016 – six months after Unum denied Holden's claim – that Dr. Fisher opined that 'since January of 2016, Ms. Holden's medical conditions have been on a downward course'" [Doc. 30 p. 13] and that "it was not until after Unum initially denied her claim that Dr. Fischer altered his opinion to assert that Holden's 'combined conditions' rendered her disabled" [*Id.* at p. 10].

The change referenced is not Dr. Fisher altering his opinion on whether she could work for another employer, but that the strength of his claims increased only after denial of disability. Whereas prior to denial, he focused on Post-Traumatic Stress Disorder,

4

post-denial, he emphasized more conditions and the severity of their effects, claiming she showed no signs of improvement.[1]

In this same timeframe, the magistrate judge noted that other physicians, Drs. Bernard and Ralph, found plaintiff had stabilized, had no complaints other than troubles sleeping, and that she was feeling less depressed with more energy [Doc. 30 p. 12]. These references to changes in Dr. Fisher's opinion and the citation to *Raskin,* which holds "against giving significant weight to a doctor's supplemental opinion when that opinion follows the patient's denial of benefits and issued without any justification for the change," are to highlight the inconsistency between Dr. Fisher increasing the severity of plaintiff's disability while others report her improvement. *Raskin v. UNUM Provident Corp.*, 121 F. App'x 96, 99 (6th Cir. 2015); [Doc 30 p. 10].

Plaintiff also incorrectly states that the magistrate judge "unambiguously relie[d]" on "the idea that Dr. Fisher did not opine Ms. Holden was prevented from performing her occupation for any employer until June 2016" [Doc. 33 p. 3]. Rather, the magistrate judge took these changes in the strength of Dr. Fisher's opinion in context with plaintiff's own statements and the opinions of other physicians to conclude that overall, although plaintiff "offers an alternative interpretation of these events," defendant's decision was "not arbitrary and capricious" as "courts are bound to accept an administrator's rational decision even in the face of compelling, countervailing evidence" [Doc. 30 p. 14–16].

---

[1] [*Compare* Doc. 19 at p. 99, 102, 105, 108 (stating PTSD diagnosis) *and* Doc. 19 at p. 297 (tying her inability to perform duties to PTSD symptoms) *with* Doc. 19 at p. 367–370 (post-denial letter)].

5

The determination was not made in reliance on any one statement, document, or timeline but was based on a "comprehensive review of Holden's medical file" [*Id*. at 14]. This objection is thus **overruled**.

B.    **Conflation of Origin of Injury and Extent of Injurious Effect**

Second, plaintiff argues that the magistrate judge erroneously conflated the workplace as an "original source" of plaintiff's trauma with "that trauma only impacting her at that specific workplace" [Doc. 31 p. 10]. Instead, plaintiff argues, the trauma originated from her workplace experiences and also affected other aspects of her life. In other words, plaintiff argues her trauma was not cabined solely to its place of origin [*Id.*] Plaintiff emphasizes that other physicians did not conclude that plaintiff could perform the job for another employer [*Id.*]. But the standard of review for an administrator's decision is not whether other physicians affirmatively indicated plaintiff could work for other companies. Rather, the issue is whether defendant's decision that she could do so was the result of a deliberate, principled reasoning process supported by substantial evidence. *De Lisle v. Sun Life Assurance Co. of Can.*, 558 F.3d 440, 444 (6th Cir. 2009).

The magistrate judge did not conflate the origin with the extent of the injury. Plaintiff's reliance on only Dr. Fisher ignores the other evidence in this case. Defendant looked at the opinions of all providers and simply came to a conclusion with which plaintiff does not agree.

In fact, the magistrate judge stated "Dr. Fisher's notes support Unum's determination that Holden's condition render her unable to perform tasks for her former

6

law firm, but that she could, nevertheless, perform her occupation as it is typically performed in the national economy" and that "the Court finds that Unum's interpretation of [Dr. Fisher's notes] to the effect that Holden was disabled in connection with her specific job. . . — as opposed to her job as performed generally in the national economy — was not an arbitrary and capricious decision" [Doc. 30 at p. 9].

Plaintiff notes two sentences in particular from the R&R. The first is that "Dr. Fischer's records support the conclusion that Holden's stress was related to unique circumstances occasioned by her work for one particular law firm" [Doc. 31 p. 10]. However, what plaintiff does not include is that the rest of the sentence indicated reports of experiences specific to her employer, "noting that she: (i) had "stress related to work;" (ii) self-reported complex PTSD resulting from alleged abuse at her current job; and (iii) continued throughout her treatment to ruminate and focus on the events at her current employment" [*Id*.].

Plaintiff also objects to the magistrate judge's statement that "[t]he opinions of Holden's other providers also support Unum's determination that Holden's disability stemmed from her specific employer" [Doc. 31 p. 10; Doc. 30 p. 11]. Immediately after this statement, the magistrate judge identified cases wherein administrators are entitled to rely upon several medical opinions and even weigh one over another within the arbitrary and capricious standard, as this practice offers a reasoned explanation for the decision. *Seiser v. Unum Provident Corp.*, 135 F. App'x. 794, 798 (6th Cir. 2005); *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003).

7

The magistrate judge then proceeded to discuss many findings from other physicians that identified plaintiff's experiences as originating from and being limited to her employment at the law firm including traumatic interactions from the workplace, specific difficult situations, a hostile work environment, a lack of general fear or avoidance behavior, and bullying from her coworkers. The analysis continues with later findings that once she was no longer employed at the law firm, her condition improved. The magistrate judge did not conflate the two but in fact analyzed the differences carefully and determined that this comprehensive review of the file was a "deliberate, principled reasoning process" [Doc. 30 p. 14]. This objection is therefore **overruled**.

### C. Procedural Irregularities

The last three objections are copied from plaintiff's original briefing and now framed as objections to the R&R for failure to address them.[2] While the magistrate judge may not have organized the opinion in the same categories as plaintiff's arguments in the briefing, the R&R does in fact address most of these issues, and with regard to the remaining issue, addressing it was unnecessary.

Two of plaintiff's procedural objections were squarely addressed by the magistrate judge. Plaintiff first objects that defendant altered its basis for denial between the initial and final decisions without giving plaintiff time to respond [Doc. 31 p. 12]. Plaintiff asserts that the first denial was premised on her condition preventing her from working in her specific job at Williams & Connolly rather than in her occupation as a whole, but that

---

[2] [*Compare* Doc. 24 at p. 17–22 (plaintiff's memorandum in support of her motion) *with* Doc. 31 at p. 12–17 (plaintiff's objections)].

the "second [denial] conceded that she might be disabled from her occupation in general, but not until late July 2016" [*Id.*]. Plaintiff states that after the second denial, she was not given an opportunity to explain how her later hospitalization was reflective of her prior conditions.

Plaintiff argues she should have been able to address how her hospitalization was reflective of her prior condition. The case plaintiff cites to support this proposition held that an insurer abused its discretion by refusing to consider medical reports prepared after the date of onset of the disability. *Crespo v. Unum Life Ins. Co. of Am.*, 294 F. Supp. 2d 980, 994–95 (N.D. Ill. 2003). The period of disability at issue is from August to December 2015. Here, the magistrate judge and defendant considered reports from after August 2015. The R&R laid out defendant's argument in their final determination, which included details about her later disability from new and different conditions after the policy had lapsed. The magistrate judge discussed the evidence from the record and addressed that none of plaintiff's providers, including Dr. Fischer, ever diagnosed her with any of these conditions before August 2016 and that this was an acute onset of new symptoms [Doc. 30 p. 12–14]. The R&R identified that because these were new and different diagnoses, this caused defendant to "maintain its determination that Holden was not disabled during the four-month leave-of-absence period between August 2015 and December 2015" [Doc. 30 at p. 4].

Instances where the Sixth Circuit Court of Appeals has held there was a change in basis for benefits termination include initial denial for failure to comply with a treatment

9

program and final determination adding that the claimant was no longer disabled, *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 444 (6th Cir. 2005), and initial denial based on failure to provide updated medical information and final determination that the claimant was no longer disabled. *Wenner v. Sun Life Assur. Co. of Can.*, 482 F.3d 878, 883 (6th Cir. 2007).

Although the second denial considers new evidence, it is the same basis for denial. The first decision stated "[w]e have determined you are able to perform the duties of your regular occupation as it normally performed in the national economy and that you have not been disabled as required by the policy since stopping work on August 15, 2015" while the second said "Lisa Holden was able to perform the duties of her occupation and she did not meet the definition of disability" during the applicable period [Doc. 19 p. 318, 767]. The magistrate judge addressed that plaintiff maintained this determination [Doc. 30 p. 4].

Second, plaintiff objects that the magistrate judge did not address her argument as to defendant's decision making, resulting in an "illogical, self-serving timeline" [Doc. 31 p. 15]. Plaintiff states that there ought to be a change in the claimant's medical condition to justify a change in result as to benefits [*Id.* p. 16]. While here, plaintiff never received long-term disability benefits, plaintiff asserts that similar principles should apply because plaintiff was awarded short-term disability but later denied long-term disability with "no change in the underlying evidence" between applications [*Id.*]. Additionally, plaintiff argues that if her symptoms were the result of "stressors unique to her specific job, one

10

would logically expect those symptoms to lessen in the absence of those work stressors. Instead, there was no improvement," and she later was hospitalized due to her condition [*Id.* at 17].

The magistrate judge directly addressed this argument. The magistrate judge discussed the plaintiff's medical records from the various medical providers that indicate initial anxiety due to work, improvement after she left work, and the eventual onset of new symptoms and disorders leading to her hospitalization in August 2016 [Doc. 30 p. 11–13]. This period of time wherein many of plaintiff's physicians indicate plaintiff was less depressed, had no other complaints, had stabilized and had normal other findings all demonstrate a timeline where plaintiff's difficulties lessened after leaving work. It was not a deterioration into hospitalization as plaintiff states. The magistrate judge addressed these records and presented a timeline.

Because the magistrate judge addressed plaintiff's arguments as to these two objections, plaintiff has not explained the source of the error other than disagreeing with the magistrate judge's determination, and these objections are "too general and therefore insufficient." *Stamtec, Inc.*, 296 F. App'x at 519. Further analysis would be cumulative and is therefore unwarranted. *Astrue*, 2020 WL 4062274, at *1.

Third and finally, plaintiff objects that the magistrate judge did not address her assertion that defendant "withheld material evidence generated in its decision on short term disability benefits from its long term disability determination" [Doc. 31 p. 14]. While the magistrate judge did not directly respond to this argument, to do so was

11

unnecessary. Plaintiff does not cite any authority that states every argument must be directly addressed, particularly when the argument was meritless.

The evidence that plaintiff asserts has been withheld is a series of statements made on a telephone call with plaintiff's employer on October 8, 2015. Afterwards, the following notes were put in the short-term disability file:

> [Employer] reported [plaintiff] had a lot of family issues that built up and there were a lot of work issues that were not work-related issues. [Employer] thinks [plaintiff] was displaying paranoia. She provided the example of [plaintiff] accusing [employer] of taking extra vacation, but it was clearly documented that [employer] uses vacation time until STD is approved and the time is credited back to [plaintiff]. [Employer] also advised [plaintiff], 'cries at the drop of a hat at work,' was making errors and her boss is very concerned about her coming back to work. [Plaintiff's] behaviors are very distracting

[Doc. 19-2 p. 76]. There is nothing to indicate that the opinions of plaintiff's employer were "material" or would have changed the outcome, given that plaintiff's providers' records were devoid of paranoia diagnoses or symptoms [Doc. 19 p. 99–100]. This is especially true given the nature of the employer as a lay person, not a medical professional, and the terms may be used and defined differently in colloquial versus clinical settings.

Medical professionals did not diagnose plaintiff with paranoia after examining her mental state both before and after that phone call. On August 20, 2015, shortly after plaintiff left work but before the phone call, Dr. Fisher noted the absence of panic disorders or phobias [Doc. 19 p. 119]. Not long after the conversation with plaintiff's employer, on October 19, 2015, Dr. Fisher stated the following in plaintiff's chart:

12

"Thinking: Logical realistic thinking. No abnormalities noted. No Delusional Thinking Present" [Doc. 19 p. 102]. Considering the combined opinions of Dr. Fisher, who plaintiff gives significant weight, and Drs. Bernard, Bradford, and Ralph, all four of whom never diagnosed plaintiff with paranoia, there is no indication that plaintiff's employer's comments are at all reliable. Additionally, the comments made specifically referenced short term disability benefits, so it stands to reason that it may have been forgotten in regard to a long-term disability file. Plaintiff fails to explain how such comments by a lay person constitute material evidence or provide reasons to explain why this information was "cherry picked" rather than set aside as irrelevant or unreliable.

Plaintiff also argues that non-examining sources are granted little weight and that plaintiff's employer had first-hand experience with plaintiff and her symptoms. Plaintiff focuses on the employer's statement that plaintiff had issues that were not work-related, saying this was not contradicted by any examining source because none ever affirmatively stated plaintiff could work for an alternate employer. Plaintiff misconceives of the issue, as discussed above in Part III.B. The employer's statements as to plaintiff's symptoms are otherwise contradicted by or accounted for in the medical records, including those by Dr. Fisher.

In the case plaintiff cites, *Spangler v. Lockheed Martin*, the insurer failed to include all medical records, and only sent portions of others to the evaluating consultants. As the court noted, "the ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its

13

ultimate decision denying benefits was arbitrary and capricious." 313 F.3d 356, 362 (6th Cir. 2002). Because the insurer in *Spangler* had excluded large portions of medical records, the decision was flawed and therefore arbitrary and capricious. *Id*. In contrast, here, a brief notation from an employer was not considered. This does not render the whole decision arbitrary and capricious.[3] The appropriate medical records were included and considered, and this objection is therefore **overruled**.

## IV. Conclusion

For the reasons discussed herein, and upon careful, *de novo* review of the record and the law, plaintiff's objections [Doc. 31] are **OVERRULED**. The Court **ACCEPTS IN WHOLE** the R&R [Doc. 30] and incorporates it into this Memorandum Opinion and Order. Accordingly, plaintiff's Motion for Judgment on the Pleadings [Doc. 23] is **DENIED**, Defendant's Motion for Judgment on the Record [Doc. 21] is **GRANTED,** and judgment shall **ENTER** for defendant.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff also argues that the employer's report should have been considered as to whether it relates back to her symptoms prior to the date of disability and placed in context as related to her 2016 hospitalization. *Crespo*, plaintiff's main authority, related to the consideration of *medical reports* after the date of disability. 294 F. Supp. 2d at 994–95. Plaintiff does not cite to any case requiring that non-medical information undergo the same requirements or analysis.

14